1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    KRISTI VERMA, et al.                      No.  2:13-cv-00865-MCE-EFB

12              Plaintiffs,

13        v.                                     **MEMORANDUM AND ORDER**

14    EFRAT OKEV, et al.

15              Defendants.

16

17        This case arises from a dispute between two married couples who are also sole

18    shareholders in a close corporation.  Kristi Verma, Vishal Verma and Zentek Corporation

19    ("Zentek") (collectively, "Plaintiffs") allege fourteen causes of action against Efrat Okev,

20    Lloyd Burton, and Augzenta, Inc. ("Augzenta") (collectively, "Defendants") for:  (1)

21    Breach of Fiduciary Duty; (2) Misappropriation of Corporate Assets; (3) Interference with

22    Contract; (4) Interference with Prospective Economic Advantage; (5) Unfair, Unlawful

23    and Fraudulent Acts and Practices; (6) Conversion; (7) Intentional Misrepresentation in

24    violation of California Civil Code section 1572; (8) Negligent Misrepresentation in

25    violation of California Civil Code section 1710; (9) Fraud and Deceit, Suppression, in

26    violation of California Civil Code section 1710; (10) Breach of Covenant of Good Faith

27    and Fair Dealing; (11) Constructive Trust; (12) Conspiracy; (13) Accounting; and (14)

28    Temporary Restraining Order/Preliminary Injunction.

1

1   Currently before the Court are two motions to dismiss: (1) Defendant Augzenta's Motion

2   to Dismiss for Lack of Personal Jurisdiction ("Motion I"), ECF No. 15; and (2) all

3   Defendants' Motion to Dismiss for Failure to State a Claim ("Motion II"), ECF No. 14.  For

4   the reasons set forth below, Defendant Augzenta's Motion I is DENIED, and Defendants'

5   Motion II[1] is GRANTED in part and DENIED in part.[2]

### BACKGROUND[3]

8       The individual Plaintiffs and individual Defendants, two married couples, had been

9   close friends for many years.  On or about August 1, 2005, they entered into an

10  agreement to start an IT consulting business and subsequently formed Zentek.  It was

11  implicit in their agreement that no party would start a competing IT consulting and

12  management service company.

13      Zentek is a California corporation with its principal place of business in California.

14  The two wives were elected as its directors.  Kristi Verma is Chief Executive Officer and

15  President, and Efrat Okev is Chief Financial Officer and Secretary.  The corporation's

16  stock was split 26% to each wife and 24% to each husband, and the parties ran a

17  profitable business for many years.

18      Recently, however, Plaintiffs discovered that the individual Defendants had

19  started Augzenta, a new IT consulting and management firm.  Augzenta is a Missouri

20  Corporation with its principal place of business in St. Louis, Missouri.  Augzenta claims

21  that it has conducted no business in California and has no California customers.

22  ///

23  ///

---

[1] Plaintiffs objected to Motion II on the grounds that Defendants exceeded the 20-page limit set by the Court.  In fact, both parties exceeded the page limits, and the Court has considered all filings.  In the future, however, any papers not filed in compliance with the applicable rules or this Court's orders will be rejected without further notice to the parties.

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[3] Unless otherwise noted, the following facts are taken from Plaintiff's Complaint.  ECF No. 2.

1    Plaintiffs allege, however, that the individual Defendants used Zentek's customer

2    lists, intellectual property, confidential trade information and secrets, and other corporate

3    assets to start Augzenta.  Additionally, current Zentek customers and key employees

4    were purportedly solicited to work with and for Augzenta as well.  Augzenta also uses

5    Zentek's name and logo, and represents on its website that it is Zentek's successor.

6

7                                    **STANDARDS**

8

9    **A.    Motion to Dismiss for Lack of Personal Jurisdiction**

10

11   A judgment rendered in violation of due process is void, and due process requires

12   that a defendant be subject to the personal jurisdiction of the court.  World-Wide

13   Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95

14   U.S. 714, 732-733 (1878); Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).  In

15   opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

16   bears the burden of establishing the court's jurisdiction over the defendant.  Wash. Shoe

17   Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012) (citation omitted).

18   However, when the defendant's motion is based on written materials rather than an

19   evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional

20   facts" to withstand the motion to dismiss.  Id. at 672 (citing Pebble Beach Co. v. Caddy,

21   453 F.3d 1151, 1154 (9th Cir. 2006)).  The court resolves all disputed facts in favor of

22   the plaintiff.  Wash. Shoe, 704 F.3d at 672.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

3

1

2

**B.     Motion to Dismiss for Failure to State a Claim for Relief**

3      On a motion to dismiss for failure to state a claim under Federal Rule of Civil

4    Procedure 12(b)(6), all allegations of material fact must be accepted as true and

5    construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

6    Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

7    statement of the claim showing that the pleader is entitled to relief" in order to "give the

8    defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

9    Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

10    47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

11    detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

12    his entitlement to relief requires more than labels and conclusions, and a formulaic

13    recitation of the elements of a cause of action will not do."  Id. (internal citations and

14    quotations omitted).  A court is not required to accept as true a "legal conclusion

15    couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

16    (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

17    right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

18    Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

19    (stating that the pleading must contain something more than "a statement of facts that

20    merely creates a suspicion [of] a legally cognizable right of action.")).

21      Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

22    assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

23    quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

24    to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

25    the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

26    Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

27    facts to state a claim to relief that is plausible on its face."  Id. at 570.

28    ///

1    If the "plaintiffs . . . have not nudged their claims across the line from conceivable to

2    plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint

3    may proceed even if it strikes a savvy judge that actual proof of those facts is

4    improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting

5    Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

6        A court granting a motion to dismiss a complaint must then decide whether to

7    grant leave to amend.  Leave to amend should be "freely given" where there is no

8    "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

9    to the opposing party by virtue of allowance of the amendment, [or] futility of the

10    amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

11    Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

12    be considered when deciding whether to grant leave to amend).  Not all of these factors

13    merit equal weight.  Rather, "the consideration of prejudice to the opposing

14    party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833

15    F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is

16    clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v.

17    Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411

18    F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149,

19    1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the

20    complaint . . . constitutes an exercise in futility . . . .")).

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

1   **ANALYSIS[4]**

2

3   **A.      Personal Jurisdiction[5]**

4

5    Defendant Augzenta argues that it is not subject to this Court's personal

6   jurisdiction.  When there is no federal statute authorizing personal jurisdiction, the district

7   court applies the law of the state in which the district court sits.  Mavrix Photo, Inc. v.

8   Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  California Code of Civil

9   Procedure section 410.10, California's long-arm statute, is "coextensive" with federal due

10   process requirements.  Id.  Accordingly, the "jurisdictional analyses under state law and

11   federal due process are the same."  Id.

12    There are two types of personal jurisdiction: general and specific.  General

13   jurisdiction exists and permits the court to hear all claims against a defendant "when their

14   affiliations with the State are so continuous and systematic as to render them essentially

15   at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131

16   S.Ct. 2846, 2851 (2011) (internal quotations omitted).  Specific personal jurisdiction, on

17   the other hand, exists when a defendant's "in-state activity is continuous and systematic

18   and that activity gave rise to the episode-in-suit."  Id. at 2853 (citing Int'l Shoe, 326 U.S.

19   at 317) (internal quotation marks omitted).  However, "the commission of certain 'single

20   or occasional acts' in a State may be sufficient to render a corporation answerable in

21   that State with respect to those acts . . . ."  Id. (quoting Int'l Shoe, 326 U.S. at 318).

22   ///

23

24    [4] Both parties object to portions of declarations offered by the other parties.  However, the Court did not need to consider those objected-to portions of the declarations in ruling on the instant motions.  Both objections are thus denied as moot.

25

26    [5] The Court recognizes that, as a threshold matter, Plaintiffs contend that Augzenta was a suspended corporation at the time the motion to dismiss was filed and thus was not entitled to defend itself in this action.  Plaintiffs' argument is rejected.  Once a previously suspended corporation is reinstated, any procedural action taken on behalf of the corporation while it was suspended is valid, as if the suspension never occurred.  See Benton v. County of Napa, 226 Cal. App. 3d 1485, 1490 (1991).  There is no dispute that Augzenta is active now.  Accordingly, its actions taken during its suspension will thus be treated as if the suspension never occurred.

27

28

1  Plaintiffs do not contend Augzenta has sufficient contacts with California to establish

2  general personal jurisdiction, so the Court need only an inquire into specific jurisdiction.

3       Defendant Augzenta asserts that this Court does not have personal jurisdiction

4  over it because it is a Missouri Corporation and has no contacts with California.  The lack

5  of direct business contacts in California, however, is not dispositive.  In the Ninth Circuit,

6  sufficient minimum contacts exist for a non-resident defendant to be subject to specific

7  personal jurisdiction if: (1) the defendant, among other things, "purposefully directed its

8  activities at the forum"; (2) the claim arises out of or relates to defendant's activities

9  related to the forum; and (3) the exercise of jurisdiction comports with fair play and

10  substantial justice.  Wash. Shoe, 704 F.3d at 672.  If Plaintiffs make the requisite

11  showing as to the first two elements, the burden shifts to Defendant to present a

12  "compelling case" that the exercise of jurisdiction would be unreasonable.  Burger King

13  Corp. v. Rudzewicz, 471 U.S. 462 (1985).

14

15         **1.  Purposeful Direction**

16

17       To satisfy the first part of the minimum contacts analysis in torts cases, courts

18  typically apply the purposeful direction or "effects test."  Wash. Shoe, 704 F.3d at 672-

19  73.  The test requires a defendant to have: "(1) committed an intentional act,

20  (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

21  likely to be suffered in the forum state."  Id. at 673 (internal quotation marks omitted).

22  The effects test allows the court to exercise personal jurisdiction over a defendant when

23  the intentional act took place outside the forum state.  Id.

24       An intentional act is "an external manifestation of the actor's intent to perform an

25  actual, physical act in the real world, not including any of its actual or intended results."

26  Id. at 674.  In Washington Shoe the defendant committed an intentional act "by

27  intentionally engaging in the actual, physical acts of purchasing and selling [an] allegedly

28  infringing [product]."  Id.

1   In the instant case, Augzenta has committed an intentional act by intentionally using

2   customer lists, customers, and employees of Plaintiff Zentek, as well as by purporting to

3   be Zentek's successor, in an effort to generate business for itself.

4          As for the second prong of the instant test, an action is expressly aimed at the

5   forum state when "the defendant is alleged to have engaged in wrongful conduct

6   targeted at a plaintiff whom the defendant knows to be a resident of the forum."  Id. at

7   675 (citations and internal quotations omitted).  All Defendants were fully aware that

8   Plaintiff Zentek was a California Corporation.  Plaintiffs allege that Augzenta wrongfully

9   intended to take business away from Plaintiff Zentek in order to generate business for

10  itself.  Accordingly, Plaintiffs adequately pled that Augzenta's conduct was expressly

11  aimed at the forum state.

12         Finally, Defendant Augzenta also must have caused harm that it "[knew was]

13  likely to be suffered in the forum state."  Marvix Photo, 647 F.3d at 1231.  As already

14  indicated, Augzenta was surely aware that Plaintiff Zentek was a California Corporation

15  and that by intentionally harming Zentek's business, Defendant Augzenta inflicted harm

16  on a California entity.

17         Accordingly, Plaintiffs have satisfied the effects test and have carried their burden

18  with respect to the first part of the Ninth Circuit's specific personal jurisdiction analysis.

19

20              **2.      Arising Out of Forum-Related Activities**

21

22         A "but for" test is used to determine whether a claim arises out of or relates to

23  Defendant Augzenta's forum-related activities.  Ballard v. Savage, 65 F.3d 1495, 1500

24  (9th Cir. 1995).  Plaintiffs must show that but for Defendant Augzenta's forum-related

25  activities, they would not have suffered the alleged injury.  See Myers v. Bennet Law

26  Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

27  ///

28  ///

1    Plaintiffs allege that they were in a profitable business venture with individual

2    Defendants.  Plaintiff Zentek was purportedly profitable up to the point when Defendant

3    Augzenta used Zentek's customer lists, customers and employees, and pretended to be

4    Plaintiff Zentek's successor, in an effort to create new business for itself.  Augzenta's

5    actions resulted in Zentek's loss of prospective business.  Accordingly, Plaintiffs have

6    successfully pled that but for Defendant Augzenta's acts, Plaintiff Zentek would have

7    realized that prospective business.

8

9              **3.      Exercise of Personal Jurisdiction Over Defendant Augzenta is
                         Reasonable**
10

11    Because Plaintiffs met their burden of establishing the first two parts of the test for

12    specific personal jurisdiction, the burden shifts to Augzenta to present a compelling case

13    that this Court's exercise of personal jurisdiction would be unreasonable.  When making

14    this reasonableness inquiry, the Ninth Circuit requires consideration of seven factors:

15    (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the

16    burden on the defendant to defend  itself in the forum state; (3) any conflict with the

17    sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

18    dispute; (5) the judicial efficiency in resolution of the controversy; (6) the importance of

19    the forum in convenient and effective relief for the plaintiff; and (7) the existence of an

20    alternative forum.  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th

21    Cir. 2011).

22    The first factor favors a California forum because, as already discussed, Augzenta

23    purposefully injected itself into the forum.  Moreover, there is effectively no burden on

24    Augzenta because the individual Defendants are the founders of that corporation and

25    will already be defending the lawsuit in California.  Requiring Augzenta to defend itself in

26    California as well will have virtually no impact on the evidence gathered, the individuals

27    required to appear before the Court, and the overall costs of the litigation.

28    ///

1   Indeed, it would be much more efficient for Defendants to litigate a single lawsuit in

2   California rather than two separate suits in two different states.

3       In addition, California is a more convenient forum for Plaintiffs, since they are

4   California residents, and "California has a strong interest in providing a forum for its

5   residents and citizens who are toriously injured." <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d

6   1104, 1115-16 (9th Cir. 2002).  The fact that Plaintiff Zentek conducts some or all of its

7   business outside California does not alter the state's interest.  <u>Id.</u> at 1116.  Finally, even

8   if Missouri provides a viable alternative forum, Augzenta has made no assertion that

9   there is a sovereignty conflict between California and Missouri with regards to the instant

10  case.  On balance, Augzenta fails to demonstrate that it is unreasonable for the Court to

11  require it to litigate in California.

12      In sum, Plaintiffs made a prima facie showing sufficient to shift the burden to

13  Augzenta to show that litigating in California is unreasonable.  Auguzenta failed to meet

14  its burden, and this Court has specific jurisdiction over Augzenta.  Motion I is thus

15  DENIED.

16

17      **B.    Failure to State a Claim for Relief**

18

19      Defendants next move to dismiss each cause of action for failure to state a claim

20  because: (1) as president of the corporation, Plaintiff K. Verma, does not have the power

21  to commence an action on behalf of the business; (2) the bulk, if not all of the causes of

22  action, are derivative in nature, and Plaintiffs failed to make a proper demand on the

23  corporation or to allege any demand would have been futile; and (3) even if the claims

24  are properly pled as derivative, they all fail because Plaintiffs have not pled facts with

25  enough specificity.  As set forth below, to the extent Plaintiffs rely on the power of the

26  President to bring suit on behalf of Zentek, the motion to dismiss is GRANTED.

27  ///

28  ///

1   However, a derivative suit has been adequately pled, and the motion to dismiss on that

2   basis is DENIED.  Finally, Defendants' motion on the merits is GRANTED in part and

3   DENIED in part.

4

5                    **1.        Power of the President to Bring Suit**

6

7           A threshold question as to the merits is whether the president of a closely held

8   corporation has the inherent or implied authority to bring a lawsuit on behalf of the

9   corporation against an outside entity, an employee of the corporation, and the Chief

10  Financial officer, who is the only other director of the Plaintiff Corporation.  The answer

11  to this question is less than clear.  See, e.g., Streeten v. Robinson, 102 Cal. 542 (1894);

12  Golden State Glass Corp. v. Superior Court of Los Angeles Cnty., 13 Cal2d 384 (1939);

13  Sealand Inv. Corp. v. Emprise Inc., 190 Cal. App. 2d 305 (1961); Anmaco, Inc. v.

14  Bohlken, 13 Cal. App. 4th 891(1993); American Center for Educ., Inc. v. Cavnar, 80 Cal.

15  App. 3d 476 (1978).  It nonetheless is clear, however, that the corporate bylaws may

16  grant or deny a president the power to bring suit.  Streeten, 102 Cal. at 545 (holding that

17  the vice president of the company had the power to hire an attorney because the board

18  had previously passed a resolution giving the vice president power to "sign any and all

19  legal document relating to the business of the company"); Golden State Glass Corp., 13

20  Cal.2d at 396-97 (holding that two of the four company directors had power to employ an

21  attorney because they were in control of the company due to the facts that they owned

22  two thirds of the shares and one of the remaining two directors no longer actively

23  involved himself with the decision making); Anmaco, 13 Cal. App. 4th at 899-900

24  (holding that the president of the corporation did not have the power to bring suit against

25  the only other director, who was the CEO and equal shareholder, because the corporate

26  by-laws specifically precluded the president from doing so).  Accordingly, absent some

27  allegation as to what is permitted or prohibited by the corporation's bylaws in this case, it

28  is unclear whether any inherent power is even relevant.

1    More specifically, there are insufficient facts pled to survive Motion II because

2  there is no mention in the Complaint, motions or briefs as to what the corporate by-laws

3  say on the matter of presidential duties and powers.  Since the bylaws will ultimately

4  govern, some mention must be made of them before relying on some sort of inherent

5  power that may or may not have been trumped by the corporation's formative

6  documents.  Streeten 102 Cal. at 545; Anmaco Inc., 13 Cal. App. 4th at 898.  Therefore,

7  to the extent Plaintiff Zentek depends on the president's power to bring this suit, the

8  Complaint is dismissed with leave to amend.

9

10              **2.    Derivative Suit**

11

12    This suit may nonetheless proceed before this Court as a derivative action.

13  Whether an action is direct or derivative is determined by the law of the state of

14  incorporation.  Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000).  Zentek is a

15  California corporation, so California law governs.

16    Under California law a derivative suit is a "representative action brought on behalf

17  of the corporation," and the shareholder plaintiff acts "in fiduciary capacity substantially

18  as guardian ad litem for the [entity]."  Chih The Shen v. Miller, 212 Cal. App. 4th 48, 57

19  (2012).  A derivative suit is appropriate where the "gravamen of the complaint is injury to

20  the corporation, or to the whole body of its stock or property without any severance or

21  distribution among individual holders, or it seeks to recover assets for the corporation or

22  to prevent dissipation of its assets."  Jones v. H. F. Ahmanson & Co., 1 Cal. 3d 93, 106

23  (1969) (internal quotations omitted).  At least some of Plaintiffs' causes of action are

24  based on an injury to the value or profitability of the Plaintiff corporation, which affects all

25  shareholders (e.g., claims of interference with prospective economic advantage and

26  breach of fiduciary duty), and Plaintiffs must therefore plead adequate facts to satisfy the

27  requirements of a derivative cause of action.

28  ///

1   Pursuant to California law, prior to filing a derivative action, a demand must be

2   made, in writing, on the board.  Cal. Corp. Code § 800(b)(2).  According to Plaintiffs, they

3   "demanded that Defendants account for Plaintiffs' injury to Zentek Corporation," and

4   "[o]n numerous occasions, Plaintiffs have demanded Defendants to cease each of the

5   activities set forth in the prior paragraphs."  Compl. ¶¶ 100, 103, May 2, 2013, ECF No.

6   2.  There is nothing in the Complaint to indicate that these demands were in writing, that

7   they conveyed an intent to pursue litigation, or that the demands were actually made to

8   Zentek's board.  These allegations are thus insufficient to establish that a demand was

9   made.

10   However, California law nonetheless also allows a shareholder to move forward

11   with a derivative action without making a written demand on the board when such

12   demand would be futile.  Bader, 179 Cal. App. at 789.  Futility must be pled with

13   particularity.  Fed. R. Civ. P. 23.1(b)(3)(B).  Demand would be futile if "the particularized

14   factual allegations . . . create a reasonable doubt that, as of the time the complaint is

15   filed, the board of directors could have properly exercised its independent and

16   disinterested business judgment in responding to a demand."  Bader, 179 Cal. App. at

17   791-92 (internal quotation marks omitted).  The mere threat of liability alone is

18   insufficient to prove futility, but rather specific facts are needed that cast doubt on

19   whether the director's decision to take or not take action is based on corporate merits

20   rather than extraneous influences.  Id. at 792.

21   Plaintiffs allege that the individual Defendants are married to each other and both

22   couples own fifty percent of Zentek.  The Complaint further alleges that the individual

23   Defendants were both involved in the misappropriation of Zentek's assets, intellectual

24   property, and client lists in order to start a new and competing firm.  The Complaint

25   states specific facts that indicate to this Court that if a demand had been made to the

26   board, outside influences and considerations would have reasonably impacted

27   Defendant Okev's decision to pursue litigation.

28   ///

13

1  Such influences include Defendant Okev and her husband's potential personal liability,

2  possible damage to their new business venture, and negative financial impact from the

3  suit and the collapse of Augzenta.  Therefore, Plaintiffs have adequately set forth the

4  necessary allegations to bring derivative claims on behalf of Zentek, and Defendants'

5  motion to dismiss on this basis is DENIED.

6

7              **3.        Individual Claim Analysis**

8

9                  **a.        Pleading Standards**

10         Defendants argue that Plaintiffs' First through Sixth Causes of Action are

11  preempted by California's Uniform Trade Secrets Act ("CUTSA") and that the state's

12  heightened pleading standards thus apply.  See Cal. Code Civ. P. § 2019.210.

13  Defendants are incorrect.  Federal rules govern federal pleading standards.  Erie R. Co.

14  v. Tompkins, 304 U.S. 64 (1938).  Therefore, Defendants' argument that this Court apply

15  a heightened standard based on CUTSA is rejected.

16

17              **b.        Breach of Fiduciary Duty (First Cause of Action)**

18

19         The elements required to state a claim for breach of fiduciary duty are:

20  (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damages

21  resulting from the breach.  Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (2008).

22  Defendants do not dispute that they owed Plaintiffs a fiduciary duty.  Instead Defendants

23  argue that Plaintiffs alleged insufficient facts to establish breach because the Complaint

24  does not state "what assets were taken, when they were taken, who the employees were

25  or how many were involved, or how many or the value of the customers that were

26  allegedly wrongfully solicited."  Mot. II at 21.  Plaintiffs are required to provide more than

27  just labels, conclusions or a recitation of the elements.  Twombly, 550 U.S. at 555.

28  ///

1    However, the what, when, who, and how many are not required; only factual

2    allegations that "raise a right of relief above the speculative level" are required.  Id.

3    Plaintiffs' allegations are sufficient under Rule 8 because they assert that Defendants

4    unlawfully used customer lists, took corporate assets, current business and key

5    employees, and utilized Zentek's name and logo.  Additionally, Plaintiffs allege that they

6    lost money and were damaged by the actions that breached the fiduciary duty owed to

7    them.  Defendants' Motion II is thus DENIED as to the First Cause of Action.

8

9            **c.**      **Misappropriation of Corporate Assets (Second Cause of**

10                  **Action)**

11   Defendants next assert that the common law claim of misappropriation of assets

12   has been substantively preempted by CUTSA.  Only misappropriation of trade secrets,

13   as opposed to misappropriation of assets generally, however, is covered by that statute.

14   Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 236 (2010).  Other civil remedies

15   that are not based on misappropriation of trade secrets are not affected.  Cal. Civ. Code

16   § 3426.7(b)(2).  When misappropriation of other corporate assets, besides trade secrets,

17   are involved, the common law doctrine still applies.  Plaintiffs assert a claim for

18   misappropriation of corporate assets, not trade secrets, and Defendants' preemption

19   argument is thus rejected.

20   Defendants also argue that, regardless of preemption, Plaintiffs failed to allege

21   the elements of a misappropriation claim.  Those elements are:

22          (a) the plaintiff invested substantial time, skill or money in
     developing its property; (b) the defendant appropriated and

23          used the plaintiff's property at little or no cost to the
     defendant; (c) the defendant's appropriation and use of

24          the plaintiff's property was without the authorization or
     consent of the plaintiff; and (d) the plaintiff can establish that

25          it has been injured by the defendant's conduct.

26

27   Arroyo, 69 Cal. App. 4th at 618.  Plaintiffs state in the Complaint that customer lists,

28   customers, key personnel and opportunities were taken without their permission.

1   Plaintiffs also assert that damages resulted from the assets being taken by Defendants.

2   Plaintiffs do not assert, however, any facts to satisfy the first two elements, namely that

3   they "invested substantial time, skill or money in developing its property" or that

4   Defendants appropriated those assets at little or no cost to them.  Id.   Therefore, Motion

5   II is GRANTED with leave to amend as to Plaintiffs' Second Cause of Action.

6

7                    **d.      Interference with Contract (Third Cause of Action)**

8

9         The elements of an interference with contract claim are: (1) a valid contract

10   between the plaintiff and a third party; (2) defendant's knowledge of the contract;

11   (3) intentional acts of the defendant designed to induce a breach or disruption of the

12   contract; (4) actual breach or disruption of the contract; and (5) resulting damages.

13   Mintz v. Blue Cross of Cal., 172 Cal. App. 4th 1594,1603 (2009).  Plaintiffs are required

14   to allege that the contract would have been performed, but for Defendants' interference.

15   Hahn v. Diaz-Barba, 194 Cal. App. 4th 1177, 1196 (2011).  While Plaintiffs generally

16   allege that some contracts existed, they fail to allege any of those contracts would

17   ultimately have been performed.  Therefore, Motion II is GRANTED with leave to amend

18   as to the Third Cause of Action.

19

20                    **e.      Interference with Prospective Economic Advantage**
                               **(Fourth Cause of Action)**
21

22         The elements of an interference with prospective economic advantage cause of

23   action are: (1) an economic relationship between plaintiff and a third party, and

24   probability of economic benefit to plaintiff in the future; (2) defendant's knowledge of the

25   relationship; (3) intentional acts of the defendant designed to disrupt the relationship;

26   (4) actual disruption; and (5) that defendant's intentional interference was the proximate

27   cause of the economic harm to the plaintiff.  Korean Supply Co. v. Lockheed Martin

28   Corp., 29 Cal. 4th 1134, 1153 (2003).

As part of the third element, Plaintiffs must plead that the intentional acts of Defendants are wrongful under some legal theory aside from the interference itself.  Della Penna v. Toyota Motor Sales, U.S.S., Inc., 11 Cal. 4th 376, 393 (1995).

Plaintiffs allege that Zentek was in business and generating a profit working with customers, i.e. third parties.  Defendants had knowledge of these relationships with customers because each of the individual Defendants was at least one of the board members of both Zentek and Augzenta, and both individual Defendants were shareholders of both companies.  Plaintiffs allege Defendants acted intentionally by taking Zentek's customers, taking and using customer lists, representing that they were Zentek's successor, and ultimately taking Zentek's business.  Plaintiffs allege that these acts caused Zentek to lose business, and therefore revenue.  Since these wrongs arise out of an independent legal theory—Defendants' breach of their fiduciary duty—Plaintiffs have adequately stated a claim for interference with prospective economic advantage.  Therefore, Motion II is DENIED as to the Fourth Cause of Action.

### f. Fraud Claims (Seventh, Eighth and Ninth Causes of Action)

Plaintiffs' Seventh, Eighth, and Ninth Causes of Action are all fraud-based.  Fraud claims are subject to a heightened pleading standard and need to be stated with particularity.  See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (the heightened pleading standard of Rule 9(b) requires plaintiff to plead facts as to "who, what, when, where, and how" of the alleged fraud).[6]

///

///

///

---

[6] Plaintiffs inaccurately cite Concha v. London, 62 F.3d 1493, 1503, for the proposition that a heightened pleading standard is not required in cases involving fiduciaries.  Their argument conveniently ignores the Ninth Circuit's caveat to that rule in cases, like this one, involving fraud or mistake.  See id. ("We therefore hold that Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake.") (emphasis added).

1    The elements of fraud in California are "a) misrepresentation; b) knowledge of

2   falsity; c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting

3   damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (internal citation

4   omitted).  The elements of negligent misrepresentation are the same as fraud, except

5   intent to induce reliance is not required. Cadlo v. Owens-Illinois, Inc., 125 Cal. App. 4th

6   513, 519 (2004).  Plaintiffs have not alleged with specificity that Defendants knew any

7   statements they made were false, nor that Defendants intended to defraud Plaintiffs or

8   induce Plaintiffs' reliance.  To the contrary, Plaintiffs state that Defendants told them

9   Zentek would be profitable—apparently a true statement, as Plaintiffs state in their

10  Complaint that Zentek was a "profitable business for many years." Compl. at ¶ 17.

11   Additionally, Defendants are required to have knowledge of the falsity of the

12  statements at the time they were made or at least prior to Plaintiffs' reliance on the

13  statements. Black v. Shearson, Hammill & Co., 266 Cal. App. 2d 362 (1968).  Plaintiffs

14  represent in the Complaint that Defendants knew Zentek would not be profitable and that

15  Defendants would not honor their commitments only after planning and actually

16  misappropriating the business assets, not when the statements were made.  Plaintiffs

17  quickly contradict these assertions with a basic recitation of the elements of fraud by

18  alleging that Defendants "knew [its statements] to be false" and made those

19  representations "with the intention to deceive and defraud." Compl. at ¶ 66.  However,

20  the specific facts asserted by Plaintiffs do not support these general allegations of fraud.

21  Therefore, Motion II is granted with leave to amend as to Plaintiffs' Seventh through

22  Ninth Causes of Action.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**g.     Breach of Covenant of Good Faith and Fair Dealing
(Tenth Cause of Action)**

In every contract there is an implied covenant of good faith and fair dealing that

requires each party to the contract to "'refrain from doing anything to injure the right of

the other to receive the agreement's benefits.'"  Wilson v. 21st Century Ins. Co., 42 Cal.

4th 713, 720 (2007), as modified, (Dec. 19, 2007) (quoting Frommoethelydo v. Fire Ins.

Exchange 42 Cal. 3d 208, 214-215 (1986)).  Defendants again attempt to impose on

Plaintiffs a heightened pleading requirement by insisting that Plaintiffs allege the

"substance and operative terms" of the agreement and whether it is oral or written.  Mot.

II at 25.  Again, however, the Complaint only needs to have "enough factual matter

(taken as true) to suggest that an agreement was made."  Twombly, 550 U.S. at 556.

Plaintiffs' Complaint states that there was an agreement between the individual

parties to go into business together, describes what that agreement was for, and when

the agreement was made.  Additionally, "[i]mplicit in that agreement was that no party

would start a competing IT consulting and management service company."  Compl. at ¶

14.  Defendants purportedly nonetheless created a new corporation that took business

away from Plaintiff Zentek.  These allegations are sufficient to state a claim of breach of

covenant of good faith and fair dealing.  Motion II is DENIED as to the Tenth Cause of

Action.

**h.     Constructive Trust, Conspiracy, Accounting, and
Temporary Restraining Order/Preliminary Injunction
(Eleventh through Fourteenth Causes of Action)**

Plaintiffs have alleged separate causes of action for constructive trust,

accounting, temporary restraining order/preliminary injunction, and conspiracy.

However, none of these claims are valid causes of action.  The first three are all

remedies.  See 5 Witkin, Cal. Proc. 5th §§ 820, 823, 840 (2008) (observing that

constructive trust, accounting, and preliminary injunction are remedies to claims).

1   Moreover, conspiracy is not actionable by itself, but rather provides a mechanism to

2   prove that an individual is liable for another wrong.  Id. at § 921.  Motion II is thus

3   GRANTED with leave to amend as to Plaintiffs' Eleventh through Fourteenth Causes of

4   Action.

5

6           D.      Punitive Damages

7

8           Finally, Defendants argue that punitive damages have also not been pled with

9   appropriate particularity.  Additionally, Defendants argue punitive damages are not

10  available at all as to Plaintiff's Unfair Competition Law ("UCL") claim (Fifth Cause of

11  Action).

12          Again, Defendants improperly attempt to impose a heightened pleading standard

13  based on state law.  Federal law requires only a "short and plain statement of the claim

14  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Even under Rule 9(b),

15  "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

16  generally."  Fed. R. Civ. P. 9(b).  Accordingly, the Ninth Circuit has determined that

17  "plaintiffs may aver scienter generally, just as the rule states—that is, simply by saying

18  that scienter existed."  In re GlenFed, Inc. Secs. Litig., 42 F.3d 1541, 1547 (9th Cir.

19  1994).

20          Construing these rules together, where Plaintiffs have stated a proper claim for

21  relief that allows for punitive damages, the demand for those damages is adequate if

22  Plaintiff has alleged that the appropriate scienter is present.  Plaintiffs have generally

23  alleged here that "Defendants acted with fraud, malice and with intent to damage

24  Plaintiffs, entitling Plaintiffs to an award of punitive damages."  Compl. at ¶ 31.  Plaintiffs'

25  punitive damages allegations are thus sufficient and Defendants' motion is DENIED as

26  to Plaintiffs' First, Fourth, and Sixth Causes of Action.

27  ///

28  ///

However, Plaintiffs' request for punitive damages as to their UCL claim fails. "A UCL action is equitable in nature," thus limiting Plaintiffs to injunctive relief and restitution. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003). Punitive damages are not available as a type of relief for UCL claims, and Defendants' motion to dismiss on this point is well taken. Accordingly, Defendants Motion is GRANTED with leave to amend as to Plaintiffs' request for punitive damages for their UCL claim.

## CONCLUSION

For the reasons stated above, Augzenta's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 15) is DENIED. Additionally, Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 14) is DENIED as to Plaintiffs' First, Fourth, Fifth, Sixth and Tenth Causes of Action and GRANTED with leave to amend as to Plaintiffs' Second, Third, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, and Fourteenth Causes of Action. Plaintiffs are not entitled to punitive damages as to their Fifth Cause of Action, but have otherwise adequately set forth their entitlement to recover such damages as to their other claims. Not later than thirty (30) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint. If no amended complaint is filed within said thirty (30) day period, without further notice to the parties, the cause of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  December 31, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

21